
FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

OCT 22 2021

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 3:21-00264 |
| v. | 18 U.S.C. § 371 |
| | 52 U.S.C. § 30125(e) |
| | 52 U.S.C. § 30125(f) |
| [1] BRIAN KELSEY | 52 U.S.C. § 30116(a)(1)(A) |
| | 52 U.S.C. § 30116(f) |
| [2] JOSHUA SMITH | 18 U.S.C. § 2 |

# INDICTMENT

THE GRAND JURY CHARGES:

<u>COUNT ONE</u>
**18 U.S.C. § 371**
**(CONSPIRACY)**

At all times material to this indictment unless otherwise indicated:

### I.  Relevant Individuals and Entities

1. **BRIAN KELSEY** was a practicing attorney and member of the Tennessee Senate, representing District 31, which includes parts of Shelby County, Tennessee. In 2016, **KELSEY** unsuccessfully ran for an open seat to represent Tennessee's 8th Congressional District in the U.S. House of Representatives.

2. Federal Committee 1 was **KELSEY'S** authorized federal campaign committee.

3. State Committee 1 was **KELSEY'S** Tennessee State Senate campaign committee.

4. **JOSHUA SMITH** was the owner and operator of Social Club 1, a members-only social club in Nashville, Tennessee popular among politicians and Nashville businessmen. **SMITH** also controlled PAC 1, a Tennessee-registered political action committee.

1

5. Unindicted Coconspirator 1 ("UCC 1") was a Tennessee businessman and prominent political fundraiser and contributor. UCC 1 controlled PAC 2, a federal independent expenditure-only committee.

6. Unindicted Coconspirator 2 ("UCC 2") was a practicing attorney and member of the Tennessee House of Representatives from in or around January 2013 to in or around September 2016, when he was expelled by a vote of the House.

7. Political Organization 1 was a nonprofit corporation that hosted an annual political conference, published ratings on Members of Congress and State politicians, and issued political endorsements. Political Organization 1 registered with the Federal Election Commission ("FEC") as a person or organization making independent expenditures.

8. Individual 1 was the Director of Government Affairs for Political Organization 1 and a member of Political Organization 1's senior management team from in or around late 2015 until in or around March 2017. In that role, Individual 1 managed Political Organization 1's political expenditures during the 2015-16 federal election cycle. Individual 1 and **KELSEY** became engaged in or around July 2017 and married in or around January 2018.

9. Individual 2 was a member of Political Organization 1's senior management team. He oversaw Political Organization 1's day-to-day operations, including managing its budget and finances. He worked closely with Individual 1 to direct all aspects of Political Organization 1's political activities, including political expenditures.

10. Individual 3 was a practicing attorney with ties to Political Organization 2, a nonprofit corporation that publicly advocated on legal and judicial issues.

11. Individual 4 was a longtime financial supporter of **KELSEY'S** political career.

## II. The Election Act

12. The Federal Election Campaign Act of 1971, as amended, Title 52, United States Code § 30101, *et seq.* ("Election Act"), imposed financial limits in the election of candidates for federal office, including the office of United States Representative, and provided for public disclosure of the financing of federal election campaigns as follows:

   a. The Election Act prohibited a federal candidate or an agent of a federal candidate from soliciting, receiving, directing, or transferring funds in connection with a federal election unless the funds were subject to the limitations, prohibitions, and reporting requirements of the Election Act. It also prohibited an individual holding State office or an agent of a State officeholder from spending any funds for a public communication that supports a candidate for federal office unless the funds were subject to the limitations, prohibitions, and reporting requirements of the Election Act ("soft money" prohibitions).

   b. The Election Act limited the amount and sources of money that may be contributed to a federal candidate or a federal candidate's authorized committee. In 2016, the Election Act limited campaign contributions to $2,700 from any one individual or organization to any one candidate in each election—primary and general.

   c. Under the Election Act, individuals and organizations could independently spend unlimited amounts of money to influence federal elections, so long as the expenditures were made independently of a candidate, the candidate's authorized committee, and their agents ("independent expenditure"). However, expenditures by a person or organization in cooperation, consultation, or concert with, or at the request or suggestion of a federal candidate, that candidate's authorized committee,

3

or their agents, constituted a contribution to such candidate and were subject to the Election Act's contribution limits ("coordinated expenditure").

      d.    The Election Act prohibited a person from making a political contribution in the name of another person, including by giving funds to a "straw" or "conduit" contributor for the purpose of having the straw donor or conduit pass the funds on to a federal candidate as his or her own contribution. The Election Act also prohibited a person from knowingly permitting his name to be used to effect such a conduit contribution.

13.    The FEC was an agency of the United States entrusted with the responsibility of administering and enforcing the Election Act. To deter abuses and instill public confidence in the election process, the FEC was responsible for receiving and making available to the public specific, accurate information about the amounts and sources of political contributions to federal candidates and political committees.

14.    Pursuant to the Election Act, the FEC required authorized campaign committees to file periodic reports of receipts and disbursements identifying, among other things, each person or organization that made a contribution to such committee during the relevant reporting period whose contribution or contributions had an aggregate amount or value in excess of $200 within the election cycle, together with the date and the amount of any such contribution. The Election Act and the FEC also required every person or organization that is not a political committee and that made independent expenditures in excess of $250 with respect to a given election in a calendar year to report those expenditures, to identify each person or organization who made a contribution in excess of $200 to further the reported independent expenditures, and to certify under penalty of perjury that the expenditure was not made in cooperation, consultation, or in concert with, or at

4

the request or suggestion of, a candidate, a candidate's authorized committee, or their agents. These periodic reports, which were filed with the FEC for the FEC to make publicly available, were intended to provide the public with a record of all contributions to candidates for federal office and expenditures made to benefit candidates for federal office in an effort to combat *quid pro quo* corruption or the appearance of corruption. As such, they constituted the public's only mandatory window into the sources of funding for federal election campaigns.

### III. The Conspiracy

15. Beginning at least from on or about February 1, 2016, and continuing through on or about October 13, 2016, in the Middle District of Tennessee and elsewhere, the Defendants,

**BRIAN KELSEY AND
JOSHUA SMITH,**

did knowingly conspire and agree together and with each other and with other individuals both known and unknown to the Grand Jury, including UCC 1 and UCC 2, to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful functions of the Federal Election Commission in the administration and enforcement of the Election Act.

A. <u>The Purposes of the Conspiracy</u>

16. It was a purpose of the conspiracy to unlawfully and secretly funnel soft money from State Committee 1 to Political Organization 1 to support **KELSEY'S** federal campaign. It was a further purpose of the conspiracy to cause Political Organization 1 to make illegal excessive contributions to Federal Committee 1 by secretly coordinating with Political Organization 1 on advertisements supporting **KELSEY'S** federal candidacy. It was a further purpose of the conspiracy to cause Federal Committee 1 and Political Organization 1 to file false reports of contributions and expenditures that concealed from the FEC and the public the unlawful use of

5

soft money and illegal coordination with Political Organization 1.

B. The Manner and Means of the Conspiracy

17. The manner and means of the conspiracy included the following:

a. The conspirators would and did solicit, receive, direct, transfer, and spend $106,341.66 of funds from State Committee 1 to influence **KELSEY'S** 2016 primary election for the U.S. House of Representatives.

b. The conspirators would and did orchestrate the concealed movement of $91,000—$66,000 of which came from State Committee 1 and $25,000 of which came from Political Organization 2—to Political Organization 1 for the coordinated purpose of funding advertisements that urged voters to support **KELSEY** in the primary election, which occurred on or about August 4, 2016.

c. The conspirators would and did cause Political Organization 1 to make $80,000 worth of hidden contributions to Federal Committee 1 in the form of coordinated expenditures.

d. The conspirators would and did cause Federal Committee 1 and Political Organization 1 to make and keep false records and submit false reports to the FEC.

C. Acts in Furtherance of the Conspiracy

18. In furtherance of the conspiracy described in Count 1 and to effect the objects of the conspiracy, the defendants named therein and other individuals, both known and unknown, performed or caused the performance of one or more of the following overt acts, among others, in the Middle District of Tennessee and elsewhere on or about the following dates:

*July 2016 Transfers from State Committee 1 and Political Organization 2 to Political Organization 1*

a. On or about July 5, 2016, Individual 4, at **KELSEY'S** direction, transferred $3,000 to State Committee 1.

b. On or about July 11, 2016, **KELSEY**, **SMITH**, UCC 2, and UCC 2's spouse attended a private dinner at Social Club 1. During the dinner, and in the presence of UCC 2 and UCC 2's spouse, **KELSEY** gave **SMITH** a check transferring $106,341.66 from State Committee 1 to PAC 1.

c. On or about July 13, 2016, **SMITH**, at **KELSEY** and UCC 2's direction, gave UCC 1 a $60,000 check from PAC 1 to PAC 2.

d. On or about July 15, 2016, **SMITH** asked UCC 1 to return that check, and **SMITH** replaced it with a different check transferring $30,000 from PAC 1 to PAC 2.

e. On or about July 13, 2016, Individual 1 emailed **SMITH**, and copied Individual 2, thanking **SMITH** for speaking with them and attaching a Political Organization 1 contribution form.

f. On or about July 14, 2016, Individual 1 again emailed **SMITH** about making a contribution to Political Organization 1.

g. On or about July 15, 2016, UCC 2 met **SMITH** to finalize the contribution to Political Organization 1.

h. On or about July 15, 2016, **KELSEY** emailed Individual 1 with the subject line "TN Major Votes for 2016 – Scoring." The email contained a list of **KELSEY'S** legislative accomplishments as a State Senator.

i. On July 15, 2016, **SMITH**, at **KELSEY** and UCC 2's direction, transferred

$30,000 from PAC 1 to Political Organization 1.

j. On or about July 20, 2016, **SMITH**, at **KELSEY** and UCC 2's direction, wrote a check transferring $7,000 from PAC 1 to PAC 2.

k. On or about July 20, 2016, Political Organization 2 transferred $25,000 to Political Organization 1 via wire.

l. On or about July 20, 2016, UCC 2 communicated with **KELSEY**, Individual 2, and UCC 1 multiple times via phone.

m. On or about July 20, 2016, UCC 2 emailed UCC 1 suggesting that PAC 2 could contribute $29,800 to Political Organization 1 to support **KELSEY'S** campaign.

n. On or about July 21, 2016, UCC 2 and UCC 1 exchanged emails about what to do with additional funds that **SMITH** would be contributing to PAC 2.

o. On or about July 21, 2016, UCC 1, at **KELSEY** and UCC 2's direction, caused PAC 2 to transfer $36,000 to Political Organization 1.

p. On or about July 21, 2016, UCC 2 and Individual 2 communicated multiple times via phone.

*July 2016 Political Organization 1 Reports to the FEC*

q. Political Organization 1 reported to the FEC that, on or about July 20, 2016, it made a $30,000 independent expenditure for the purpose of a "radio media buy" to support **KELSEY** in the 2016 primary election when, in truth and in fact, the expenditure was coordinated with **KELSEY** and his agents and was not independent.

r. Political Organization 1 reported to the FEC that, on or about July 22, 2016, it made a $19,480 independent expenditure for the purpose of "radio media buy" to support

8

KELSEY in the 2016 primary election when, in truth and in fact, the expenditure was coordinated with KELSEY and his agents and was not independent.

s. Political Organization 1 reported to the FEC that, on or about July 26, 2016, it made a $30,520 independent expenditure for the purpose of "radio/digital media" to support KELSEY in the 2016 primary election when, in truth and in fact, the expenditure was coordinated with KELSEY and his agents and was not independent.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
## 52 U.S.C. § 30125(e)
## ( "Soft Money" to Federal Candidate)

19. The allegations contained in paragraphs 1 through 14 and 16 through 18 of this Indictment are hereby repeated, realleged, and incorporated by reference as though fully set forth herein.

20. In or about July 2016, in the Middle District of Tennessee and elsewhere, the Defendants,

**BRIAN KELSEY AND
JOSHUA SMITH,**

aided and abetted by each other and others, while **KELSEY** was a candidate for Federal office, and **SMITH** was an agent of **KELSEY**, solicited, received, directed, transferred, and spent funds, which aggregated $25,000 and more in calendar year 2016, that were soft money not subject to the limitations, prohibitions, and reporting requirements of the Election Act, namely, funds from State Committee 1, in connection with an election for federal office, namely, the 2016 primary election

9

for the office of United States Representative for Tennessee's 8th Congressional District, including funds for any federal election activity.

All in violation of Title 52, United States Code, Sections 30125(e)(1)(A) and 30109(d)(l)(A)(i), and Title 18, United States Code, Section 2.

## COUNT THREE
## 52 U.S.C. § 30125(f)
## ("Soft Money" from State Officeholder)

21. The allegations contained in paragraphs 1 through 14 and 16 through 18 of this Indictment are hereby repeated, realleged, and incorporated by reference as though fully set forth herein.

22. In or about July 2016, in the Middle District of Tennessee and elsewhere, the Defendants,

**BRIAN KELSEY AND
JOSHUA SMITH,**

aided and abetted by each other and others, while **KELSEY** was an individual holding State office, namely, Member of the Tennessee State Senate, and **SMITH** was an agent of **KELSEY**, spent funds, which aggregated $25,000 and more in calendar year 2016, that were soft money not subject to the limitations, prohibitions, and reporting requirements of the Election Act, namely, funds from State Committee 1, in connection with an election for federal office for a public communication that referred to a clearly identified candidate for federal office, namely, **KELSEY**, who was a candidate for the office of United States Representative for Tennessee's 8th Congressional District, and that promoted and supported **KELSEY**, a candidate for that office.

All in violation of Title 52, United States Code, Sections 30125(f)(1), 30101(20)(A)(iii), and 30109(d)(l)(A)(i), and Title 18, United States Code, Section 2.

## COUNT FOUR
## 52 U.S.C. §§ 30116(a)(1)(A)
### (Making Excessive Contributions)

23. The allegations contained in paragraphs 1 through 14 and 16 through 18 of this Indictment are hereby repeated, realleged, and incorporated by reference as though fully set forth herein.

24. In or about July 2016, in the Middle District of Tennessee and elsewhere, the Defendant,

**BRIAN KELSEY,**

aided and abetted by others, knowingly and willfully made and caused to be made contributions to **KELSEY'S** U.S. House campaign committee in excess of the limits of the Election Act, and that excess amount aggregated $25,000 and more in calendar year 2016, and did so by making and causing contributions by Political Organization 1 to Federal Committee 1 in the form of coordinated expenditures by Political Organization 1 for advertisements supporting **KELSEY'S** election, which expenditures were made in cooperation, consultation, and concert, with, and at the request and suggestion of, **KELSEY** and his agents.

All in violation of Title 52, United States Code, Sections 30116(a)(1)(A), 30116(a)(7)(B)(i), and 30109(d)(1)(A)(i), and Title 18, United States Code, Section 2.

## COUNT FIVE
## 52 U.S.C. § 30116(f)
### (Accepting Excessive Contributions)

25. The allegations contained in paragraphs 1 through 14 and 16 through 18 of this Indictment are hereby repeated, realleged, and incorporated by reference as though fully set forth herein.

11

26. In or about July 2016, in the Middle District of Tennessee and elsewhere, the Defendant,

**BRIAN KELSEY,**

aided and abetted by others, while a candidate for federal office, knowingly and willfully accepted and received contributions from Political Organization 1 in excess of the limits of the Election Act, and that excess amount aggregated $25,000 and more in calendar year 2016, and did so by accepting and receiving contributions made by Political Organization 1 to Federal Committee 1 in the form of coordinated expenditures by Political Organization 1 for advertisements supporting **KELSEY'S** election, which expenditures were made in cooperation, consultation, and concert, with, and at the request and suggestion of, **KELSEY** and his agents.

All in violation of Title 52, United States Code, Sections 30116(a)(1)(A), 30116(a)(7)(B)(i), 30116(f), and 30109(d)(l)(A)(i), and Title 18, United States Code, Section 2.

A TRUE BILL.

FOREPERSON

MARY JANE STEWART
ACTING UNITED STATES ATTORNEY
MIDDLE DISTRICT OF TENNESEE

AMANDA J. KLOPF
ASSISTANT UNITED STATES ATTORNEY

12

COREY R. AMUNDSON
CHIEF, PUBLIC INTEGRITY SECTION

JOHN P. TADDEI
TRIAL ATTORNEY


JOSEPH C. MURPHY, JR.
ACTING UNITED STATES ATTORNEY
WESTERN DISTRICT OF TENNESSEE

DAVID PRITCHARD
ASSISTANT UNITED STATES ATTORNEY

13

Case 3:21-cr-00264   Document 1   Filed 10/22/21   Page 13 of 13   PageID #: 13