UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 3:21-cr-00264 |
| v. | ) |
| | ) Chief Judge Crenshaw |
| JOSHUA SMITH | ) |

PLEA AGREEMENT

The United States of America, through Mark H. Wildasin, United States Attorney for the Middle District of Tennessee, Assistant United States Attorney Amanda J. Klopf, Corey R. Amundson, Chief of the Public Integrity Section of the United States Department of Justice, Trial Attorney John P. Taddei, and Assistant United States Attorney David Pritchard of the Western District of Tennessee (collectively, "United States" or "government"), and defendant, Joshua Smith, through defendant's counsel, Philip S. Georges, pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, have entered into an agreement, the terms and conditions of which are as follows:

Charges and Penalties in This Case

1. Defendant acknowledges that he has been charged in the indictment in this case with the following:

   a. Count One – Conspiracy to defraud the United States, in violation of Title 18, United States Code, Section 371. The offense carries the following maximum penalties: five years of imprisonment, three years of supervised release, a fine of $250,000, and a special assessment of $100.

   b. Count Two – Aiding and abetting the solicitation, receipt, direction, transfer, and spending of $25,000 and more of soft money in connection with a federal election,

in violation of Title 52, United States Code, Sections 30125(e)(1)(A) and 30109(d)(1)(A)(i), and Title 18, United States Code, Section 2. The offense carries the following maximum penalties: five years of imprisonment, three years of supervised release, a fine of $250,000, and a special assessment of $100.

    c. Count Three – Aiding and abetting the spending of $25,000 and more of soft money from a State officeholder in connection with a federal election, in violation of Title 52, United States Code, Sections 30125(f)(1), 30101(20)(A)(iii), and 30109(d)(1)(A)(i), and Title 18, United States Code, Section 2. The offense carries the following maximum penalties: five years of imprisonment, three years of supervised release, a fine of $250,000, and a special assessment of $100.

2. Defendant has read the charges against him contained in the indictment. Those charges have been fully explained to him by his attorney. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant is Pleading Guilty

3. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count Two of the Indictment. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the Indictment.

## Acknowledgements and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

4. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney for the Middle District of Tennessee, the Public Integrity Section of the United States Department of Justice, the United States Attorney for the Western

2

District of Tennessee, and defendant regarding defendant's criminal liability in case 3:21-cr-00264.

5. Defendant understands that by pleading guilty he surrenders certain trial rights, including the following:

    a. If defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. Defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if defendant, the government, and the Court all agreed to have no jury.

    b. If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent; that the government bears the burden of proving defendant guilty of the charges beyond a reasonable doubt; and that it must consider each count of the indictment against defendant separately.

    c. If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

    d. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence on his own behalf. If

3

the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

    e.    At a trial, defendant would have a privilege against self-incrimination so that he could testify or decline to testify, and no inference of guilt could be drawn from his refusal to testify.

6. Defendant understands that by pleading guilty he is waiving all of the trial rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Factual Basis

7. Defendant will plead guilty because he is in fact guilty of the charge contained in Count Two of the Indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

    a.    Defendant JOSHUA SMITH was the owner and operator of Social Club 1, a members-only social club in Nashville, Tennessee. SMITH also controlled PAC 1, a Tennessee-registered political action committee.

    b.    BRIAN KELSEY was a practicing attorney and member of the Tennessee Senate, representing District 31, which includes parts of Shelby County, Tennessee. In 2016, KELSEY unsuccessfully ran for an open seat to represent Tennessee's 8th Congressional District in the U.S. House of Representatives. In or around 2016, KELSEY was a member of Social Club 1.

    c.    Federal Committee 1 was KELSEY'S authorized federal campaign committee.

4

d. State Committee 1 was KELSEY's Tennessee State Senate campaign committee.

e. Unindicted Coconspirator 1 ("UCC 1") was a Tennessee businessman and prominent political fundraiser and contributor. UCC 1 controlled PAC 2, a federal independent expenditure-only committee.

f. Unindicted Coconspirator 2 ("UCC 2") was a practicing attorney and member of the Tennessee House of Representatives from in or around January 2013 to in or around September 2016, when he was expelled by a vote of the House.

g. Political Organization 1 was a nonprofit corporation that hosted an annual political conference, published ratings on Members of Congress and State politicians, and issued political endorsements.

h. Individual 1 was the Director of Government Affairs for Political Organization 1 and a member of Political Organization 1's senior management team.

i. Individual 2 was a member of Political Organization 1's senior management team. He worked with Individual 1 on aspects of Political Organization 1's political activities, including political expenditures.

j. On or about February 1, 2016, KELSEY announced his candidacy to represent Tennessee's 8th Congressional District in the U.S. House of Representatives.

k. On or about July 11, 2016, KELSEY, SMITH, UCC 2, and UCC 2's spouse attended a private dinner at Social Club 1. During the dinner, KELSEY gave SMITH a check transferring $106,341.66 from State Committee 1 to PAC 1. SMITH caused that check to be deposited into a bank account associated with PAC 1.

5

l.  On or about July 13, 2016, SMITH, wrote a $56,000 check from PAC 1 to PAC 2.

m.  On or about July 13, 2016, SMITH voided the $56,000 check and replaced it with a $60,000 check from PAC 1 to PAC 2, which SMITH gave to UCC 1.

n.  On or about July 15, 2016, UCC 1 returned the $60,000 check, and SMITH, at KELSEY and UCC 2's direction, replaced it with a different check transferring $30,000 from PAC 1 to PAC 2. The purpose of this transfer was to provide funds for federal election activity to benefit KELSEY's federal political campaign to represent Tennessee's 8th Congressional District in the U.S. House of Representatives.

o.  On or about July 13, 2016, Individual 1 emailed SMITH, and copied Individual 2, thanking SMITH for speaking with them and attaching a Political Organization 1 contribution form.

p.  On or about July 14, 2016, Individual 1 again emailed SMITH about making a contribution to Political Organization 1.

q.  On or about July 15, 2016, UCC 2 met SMITH to finalize the contribution to Political Organization 1.

r.  On or about July 15, 2016, SMITH, at KELSEY and UCC 2's direction, transferred $30,000 from PAC 1 to Political Organization 1. The purpose of this transfer was to provide funds for federal election activity to benefit KELSEY's federal political campaign to represent Tennessee's 8th Congressional District in the U.S. House of Representatives.

s.  On or about July 20, 2016, SMITH, at KELSEY and UCC 2's direction, wrote a check transferring $7,000 from PAC 1 to PAC 2. The purpose of this transfer was

to provide funds for federal election activity to benefit KELSEY's federal political campaign to represent Tennessee's 8th Congressional District in the U.S. House of Representatives.

t.  In or around July 2016, in the Middle District of Tennessee and elsewhere, SMITH, aided and abetted by KELSEY and others, while KELSEY was a candidate for Federal office, and SMITH was an agent of KELSEY, solicited, received, directed, transferred, and spent funds, which aggregated $67,000 in calendar year 2016, that were soft money not subject to the limitations, prohibitions, and reporting requirements of the Federal Election Campaign Act of 1971, as amended, Title 52, United States Code § 30101, *et seq.*, namely, funds from State Committee 1, in connection with an election for federal office, namely, the 2016 primary election for the office of United States Representative for Tennessee's 8th Congressional District, including funds for any federal election activity.

u.  SMITH acted willfully, with knowledge that some part of his course of conduct was unlawful and with the intent to do something the law forbids, and not by mistake or accident.

This statement of facts is provided to assist the Court in determining whether a factual basis exists for defendant's plea of guilty. The statement of facts does not contain each and every fact known to defendant and to the United States concerning defendant's and/or others' involvement in the offense conduct and other matters.

## Sentencing Guidelines Calculations

8.  The parties understand that the Court will take account of the United States Sentencing Guidelines (hereinafter "U.S.S.G."), together with the other sentencing factors set forth at 18 U.S.C. § 3553(a), and will consider the U.S.S.G. advisory sentencing range in imposing

7

defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective November 1, 2018.

9. For purposes of determining the U.S.S.G. advisory sentencing range, the United States and defendant agree to recommend to the Court, pursuant to Rule 11(c)(1)(B), the following:

    a. Offense Level Calculations.

        i. The base offense level for the count of conviction is 8, pursuant to U.S.S.G. § 2C1.8(a).

        ii. The offense level is increased by 6 levels for illegal transactions with a value more than $40,000, but less than $95,001, pursuant to U.S.S.G. §§ 2C1.8(b)(1) and 2B1.1(b)(1)(D).

        iii. Assuming defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the government, through his allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). If the offense level of 16 or greater, assuming defendant accepts responsibility as described in the previous sentence, the United States will move for an additional one-level reduction pursuant to U.S.S.G § 3E1.1(b), because defendant will have given timely notice of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.

        iv. There are no further agreements as to the applicability of other sections and subsections of the U.S.S.G.

8

b.  Criminal History Category.

   i.  The parties have no agreement as to defendant's criminal history.

c.  Defendant is aware that the any estimate of the offense level or guidelines range that defendant may have received from defendant's counsel, the United States, or the Probation Office is a prediction, not a promise, and is not binding on the Probation Office or the Court. Defendant understands that the Probation Office will conduct its own investigation and make its own recommendations, that the Court ultimately determines the facts and law relevant to sentencing, that the Court's determinations govern the final guidelines calculations, and that the Court determines both the final offense level and the final guidelines range. Accordingly, the validity of this agreement is not contingent upon the Probation Officer's or the Court's concurrence with the above calculations. In the event that the Probation Office or the Court contemplates any U.S.S.G. adjustments, departures, or calculations different from those recommended above, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same. Defendant further acknowledges that if the Court does not accept the guidelines calculations of the parties, defendant will have no right to withdraw his guilty plea.

## Cooperation

10. Defendant agrees to cooperate fully and truthfully with the United States and to provide all information known to him regarding any criminal activity. In that regard:

a.  Defendant agrees to respond truthfully and completely to any and all questions that may be put to him, whether in interviews, before a grand jury, or at any trial(s) or other court proceedings.

9

b. Defendant agrees to be reasonably available for debriefings and pre-trial conferences as the United States may require.

c. Defendant agrees to produce voluntarily any and all documents, records, writings, or materials of any kind in his possession or under his care, custody, or control relating directly or indirectly to all areas of inquiry and investigation.

d. Defendant consents to continuances of his sentencing hearing as requested by the United States.

11. Nothing in this Plea Agreement requires the government to accept any cooperation or assistance that defendant may choose to proffer. The decision as to whether and how to use any information and/or cooperation that defendant provides (if at all) is in the exclusive discretion of the United States.

12. Defendant must at all times give complete, truthful, and accurate information and testimony, and must not commit, or attempt to commit, any further crimes. Defendant understands that if he falsely implicates an innocent person in the commission of a crime, or exaggerates the involvement of any person in the commission of a crime in order to appear cooperative, or if defendant falsely minimizes the involvement of any person in the commission of a crime in order to protect that person, then defendant will be in violation of the Plea Agreement. Should the United States determine that defendant has failed to cooperate fully, has intentionally given false, misleading, or incomplete information or testimony, has committed or attempted to commit any further crimes, or has otherwise violated any provision of this Plea Agreement, the United States, may in its discretion and as appropriate in light of particular circumstances: (1) prosecute defendant for perjury, false declarations or statements, and obstruction of justice; (2) prosecute any other

crime alleged in the indictment that would have otherwise been dismissed at sentencing; (3) charge defendant with other crimes; and (4) recommend a sentence up to the statutory maximum.

13. This Plea Agreement is not conditioned upon charges being brought against any other individual. This Plea Agreement is not conditioned upon any outcome in any pending investigation. This Plea Agreement is not conditioned upon any result in any future prosecution that may occur because of defendant's cooperation. This Plea Agreement is conditioned upon defendant providing full, complete, and truthful cooperation.

14. If the United States in its sole discretion determines that defendant has cooperated fully, provided substantial assistance to law enforcement authorities, and otherwise complied with the terms of this Plea Agreement, prior to sentencing the government shall file a motion pursuant to U.S.S.G. § 5K1.1 with the Court setting forth the nature and extent of defendant's cooperation. Defendant understands that at the time this Plea Agreement is entered, no one has promised that a substantial assistance motion will be made on defendant's behalf.

15. The United States cannot, and does not, make any promise or representation as to what sentence defendant will receive. The United States will inform the Probation Office and the Court of (a) this Plea Agreement; (b) the nature and extent of defendant's activities with respect to this case and all other activities of defendant that the United States deems relevant to sentencing; and (c) the nature and extent of defendant's cooperation.

<u>Agreements Relating to Sentencing</u>

16. If the government determines, in its sole discretion, that defendant has provided substantial assistance to the government in the investigation and prosecution of another person who has committed an offense, then the government shall move the Court to depart downward from the court-determined guidelines range pursuant to U.S.S.G. § 5K1.1. In that case, the

11

crime alleged in the indictment that would have otherwise been dismissed at sentencing; (3) charge defendant with other crimes; and (4) recommend a sentence up to the statutory maximum.

13. This Plea Agreement is not conditioned upon charges being brought against any other individual. This Plea Agreement is not conditioned upon any outcome in any pending investigation. This Plea Agreement is not conditioned upon any result in any future prosecution that may occur because of defendant's cooperation. This Plea Agreement is conditioned upon defendant providing full, complete, and truthful cooperation.

14. If the United States in its sole discretion determines that defendant has cooperated fully, provided substantial assistance to law enforcement authorities, and otherwise complied with the terms of this Plea Agreement, prior to sentencing the government shall file a motion pursuant to U.S.S.G. § 5K1.1 with the Court setting forth the nature and extent of defendant's cooperation. Defendant understands that at the time this Plea Agreement is entered, no one has promised that a substantial assistance motion will be made on defendant's behalf.

15. The United States cannot, and does not, make any promise or representation as to what sentence defendant will receive. The United States will inform the Probation Office and the Court of (a) this Plea Agreement; (b) the nature and extent of defendant's activities with respect to this case and all other activities of defendant that the United States deems relevant to sentencing; and (c) the nature and extent of defendant's cooperation.

<u>Agreements Relating to Sentencing</u>

16. If the government determines, in its sole discretion, that defendant has provided substantial assistance to the government in the investigation and prosecution of another person who has committed an offense, then the government shall move the Court to depart downward from the court-determined guidelines range pursuant to U.S.S.G. § 5K1.1. In that case, the

11

government, in its sole discretion, also may recommend that the Court impose a particular sentence or depart downward to a particular extent. Defendant understands that the decision whether, and to what extent, to depart below the court-determined guidelines range rests solely with the Court.

17. Each party is free to recommend whatever sentence it feels appropriate.

18. Defendant understands that if the government does not move the Court to depart downward from the court-determined guidelines range pursuant to U.S.S.G. § 5K1.1, the Court shall impose a sentence taking into consideration the court-determined guidelines range together with other sentencing factors. Defendant may not withdraw his plea of guilty because the government has determined not to make a motion pursuant to U.S.S.G. § 5K1.1.

19. It is understood by the parties that the Court is neither a party to nor bound by this Plea Agreement and, after consideration of the U.S.S.G., may impose the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea. Similarly, defendant understands that any recommendation by the Court related to location of imprisonment is not binding on the Bureau of Prisons.

20. Defendant agrees to pay the special assessment of $100 at the time of sentencing to the Clerk of the U.S. District Court.

<u>Presentence Investigation Report/Post-Sentence Supervision</u>

21. Defendant understands that the United States Attorney's Office, in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, as well as any related matters. The

12

Case 3:21-cr-00264 Document 65 Filed 10/19/22 Page 12 of 18 PageID #: 183

government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

22. Defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of his sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

23. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Offices for the Middle and Western Districts of Tennessee and the Public Integrity Section of the United States Department of Justice and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Plea Agreement.

24. Defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service (IRS) in its collection of any taxes, interest, or penalties from defendant and his spouse or defendant's partnership or corporations.

13

Case 3:21-cr-00264   Document 65   Filed 10/19/22   Page 13 of 18 PageID #: 184

## Entry of Guilty Plea

25. The parties jointly request that the Court accept the defendant's plea of guilty as set forth in this agreement and enter an order reflecting the acceptance of the plea while reserving acceptance of this plea agreement until receipt of the pre-sentence report and sentencing.

## Waiver of Appellate Rights

26. Regarding the issue of guilt, defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether he is guilty of the crime(s) to which he is agreeing to plead guilty; and (ii) trial rights that might have been available if he exercised his right to go to trial. Regarding sentencing, defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal any sentence within or below the court-determined guidelines range. Defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c)(2) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241. However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence: (i) within or above the court-determined guidelines range; or (ii) below such guideline range if the government has moved for a downward departure pursuant to U.S.S.G. § 5K1.1.

Other Terms

27.     Defendant agrees to cooperate with the United States in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States. Defendant further agrees that any monetary penalties imposed by the Court will be subject to immediate enforcement as provided for in 18 U.S.C. § 3613, and submitted to the Treasury Offset Programs so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts but will not affect the periodic payment schedule.

28.     Defendant agrees to cooperate with the IRS in any tax examination or audit of defendant and his spouse and defendant's partnerships or corporations that directly or indirectly relates to or arises out of the course of conduct defendant has acknowledged in this Plea Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request. Nothing in this paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

29.     Should defendant engage in additional criminal activity after he has pled guilty but prior to sentencing, defendant shall be considered to have breached this Plea Agreement, and the government at its option may void this Plea Agreement.

Conclusion

30.     Defendant understands that the indictment and this Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to any person.

31.     Defendant understands that his compliance with each part of this Plea Agreement extends until such time as he is sentenced, and failure to abide by any term of the Plea Agreement

is a violation of the Plea Agreement. Defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or may require defendant's specific performance of this Plea Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Plea Agreement, or defendant breaches any of its terms and the government elects to void the Plea Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Plea Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of such prosecutions.

32. Defendant and his attorney acknowledge that no threats have been made to cause defendant to plead guilty.

33. No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement and any proffer agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below.

16

Case 3:21-cr-00264   Document 65   Filed 10/19/22   Page 16 of 18 PageID #: 187

34. <u>Defendant's Signature:</u> I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending indictment. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it.

Date: 10/19/22

Joshua Smith
Defendant

35. <u>Defense Counsel Signature:</u> I am counsel for defendant in this case. I have fully explained to defendant his rights with respect to the pending indictment. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to defendant the provisions of those guidelines that may apply in this case. I have reviewed carefully every part of this Plea Agreement with defendant. To my knowledge, defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date: 10-19-2022

Phillip S. Georges

Respectfully submitted,

| | |
|---|---|
| MARK H. WILDASIN<br>United States Attorney<br>Middle District of Tennessee | COREY R. AMUNDSON<br>Chief<br>Public Integrity Section |

By: _____
    AMANDA J. KLOPF
    Assistant U.S. Attorney

By: _____
    JOHN P. TADDEI
    Trial Attorney

 /s/ Katy Risinger
KATY RISINGER
Deputy Chief
Organized Crime Unit

By:

 /s/ David Pritchard
DAVID PRITCHARD
Assistant U.S. Attorney
Western District of Tennessee